**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 16-14792-MSH |
| YACOUB B. MELHEM | ) | |
| and | ) | |
| DENISE Y. MELHEM | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |
| PAUL DELAIARRO | ) | |
| and | ) | |
| JOHNNY'S OIL COMPANY, INC. | ) | Adversary Proceeding |
| | ) | No. 17-01024-MSH |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YACOUB B. MELHEM | ) | |
| and | ) | |
| DENISE Y. MELHEM | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

The plaintiff, Paul DeLaiarro, on his own behalf and on behalf of a dissolved corporation Johnny's Oil Company, Inc., initiated this adversary proceeding with a complaint, as amended, against the defendants, Yacoub and Denise Melhem, the debtors in the main chapter 7 case. In it he seeks a judgment that certain indebtedness of the Melhems to Mr. DeLaiarro be excepted from the Melhems' bankruptcy discharge by virtue of Bankruptcy Code § 523(a)(2)(A) and

§ 523(a)(6).[1] After a bench trial, I now set forth my findings of fact and rulings of law with respect to this proceeding.

I

The Melhems, who are husband and wife, emigrated from Lebanon to the United States in 1991. Mr. Melhem has the equivalent of a fifth-grade education and claims no ability to write or speak English. Ms. Melhem attended high school in Lebanon. She has some English comprehension skills but claims limited speaking ability. Both the Melhems testified at the trial through an interpreter.

In 2010, Mr. Melhem owned and operated a gas station in the Roslindale neighborhood of Boston. At various times he operated the gas station through one or more corporate entities, which were all dissolved by the Massachusetts Secretary of State in 2014. Mr. Melhem was a hands-on owner. He was typically present at the gas station during its hours of operation and personally performed many tasks including pumping gas. Ms. Melhem did not own any of the assets of the gas station nor did she work there full time. When she was present, she sometimes worked the cash register or wrote checks at Mr. Melhem's direction but never signed them. Mr. Melhem had complete control over the gas station's bank accounts, including its checking account at Citizens Bank which was in the name of one of his companies, SP Petrol, Inc. He alone signed the checks he asked Ms. Melhem to prepare. Ms. Melhem had no access to the funds in the Citizens Bank checking account. She never met Mr. DeLaiarro.

Mr. Melhem's financial control and cash management systems were virtually non-existent. He kept records of transactions with his vendors by writing notes on the back of copies of the checks he gave to the vendors. He used two different checkbooks for the same account

---

[1] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

resulting in checks issued out of sequence. In April and May of 2010, the period during which he was dealing with Mr. DeLaiarro, the Citizens Bank checking account was frequently overdrawn.

Mr. DeLaiarro ran a home heating oil and gasoline sales and delivery business. He sold gasoline to a handful of gas stations in and around Boston. Prior to the start of his relationship with Mr. Melhem, the terms and procedures by which Mr. DeLaiarro sold gasoline to his customers were unvarying. A station owner would place an order over the phone or by fax, Mr. DeLaiarro would fax back an approximate price quote, and the station owner would confirm the order by return fax or phone call. Mr. DeLaiarro or his driver, Peter, would then drive to a fuel terminal in Revere or Braintree, fill his tanker (at which time he would know the exact cost of the gasoline) and deliver the gasoline along with a final bill to the gas station. The gas station owner or an employee would hand the delivery person a check in payment for the fuel at the time of delivery.

In April of 2010, Mr. DeLaiarro began selling gasoline to Mr. Melhem. In taking Mr. Melhem on as a customer, Mr. DeLaiarro performed no credit or reference check on Mr. Melhem. Had he done so he might have learned that Mr. Melhem had filed personal bankruptcy in 1998. Mr. DeLaiarro did not require Mr. Melhem to fill out an application or agree in writing to any terms of their business relationship. Mr. DeLaiarro had no relationship whatsoever with Ms. Melhem.

Mr. DeLaiarro's dealings with Mr. Melhem differed from his standard practice of requiring his customers to pay for gasoline at the time of delivery. He delivered gasoline to Mr. Melhem without receiving payment for the delivery. Mr. DeLaiarro testified that his agreement with Mr. Melhem was that Mr. Melhem would pay for a gasoline delivery by the day after the delivery. Mr. DeLaiarro could not produce any document corroborating the existence of this

3

arrangement never mind that Mr. Melhem had agreed to it. For his part, Mr. Melhem testified that he **always** gave Mr. DeLaiarro or his driver a check at the time of a delivery. The preponderance of the evidence does not support either party's testimony.

Mr. DeLaiarro made five or six deliveries to Mr. Melhem in April 2010 and Mr. Melhem paid for all of them by checks drawn on the Citizens Bank account. No evidence was presented as to the time between a delivery and payment. One of those checks, number 1136 dated April 26, 2010, in the amount of $8370, was returned for insufficient funds. Mr. Melhem ultimately made good on this check. The experience did not cause Mr. DeLaiarro to alter the way he did business with Mr. Melhem.

Mr. DeLaiarro made three gasoline deliveries to Mr. Melhem in May 2010: on May 1st; May 3rd; and May 5th. The bill for the May 1st delivery was $8412.60. Mr. Melhem paid for this delivery by check dated May 4, 2010. The May 3rd delivery was accompanied by a bill for $9965.70. At the time of the May 3rd delivery, Mr. Melhem had not yet paid Mr. DeLaiaro for the previous delivery. Mr. Melhem paid for the May 3rd delivery with a check dated May 6, 2010. The check, however, was unsigned. Mr. Melhem testified this was unintentional. Mr. DeLaiarro testified he didn't notice the problem until he presented the check for deposit at his bank and the bank refused to accept it. Mr. DeLaiarro's third and final delivery to Mr. Melhem took place on May 5th and was accompanied by a bill for $9348.15. Mr. Melhem issued a check dated May 7, 2010, in the amount of $19,313.70 to pay for the May 5th delivery as well as the balance due for the May 3rd delivery still outstanding as a result of the rejected unsigned check.

Despite Mr. DeLaiarro's testimony that his general practice was to require payment at the time of delivery or, in the case of Mr. Melhem, by no later than the day after delivery, none of Mr. Melhem's May checks were given to Mr. DeLaiarro within this time frame. While the

4

evidence is murky, it appears likely that on one or more occasion Mr. Melhem did give Mr. DeLaiarro a check at the time of delivery, but for a prior delivery, not for the current one. According to Mr. DeLaiarro's testimony, this was not an arrangement he would tolerate from any of his customers.

In the end, Mr. DeLaiarro received no payment for any of the May deliveries. The May 6th check was rejected because it was unsigned and the checks dated May 4th and May 7th were returned for insufficient funds. As a result, Mr. DeLaiarro, through his company, sued the Melhems in state superior court and in 2012 obtained default judgments against them, jointly and severally, in the amount of $27,726.45, plus interest and attorneys' fees. On December 21, 2016, the Melhems filed their joint chapter 7 petition commencing the main case hoping to discharge, among others, their debt to Mr. DeLaiarro.

## II

In his complaint Mr. DeLaiarro seeks to exclude the Melhems' debt to him from discharge based on Bankruptcy Code § 523(a)(2)(A), which applies to a debt arising from a false representation, false pretenses or actual fraud (count I), and § 523(a)(6), which deals with a debt caused by willful and malicious injury (count II).[2]

---

[2] Section 523, in relevant part, states:

> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt—
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. § 523(a).

5

In a prior order denying the parties' cross-motions for summary judgment, I ruled that Mr. DeLaiarro's state court default judgment, which was devoid of any findings of fact, failed to satisfy the standards for non-dischargeability under the Bankruptcy Code and had no preclusive effect as to Mr. DeLaiarro's claims here. Mr. DeLaiarro was thus put to his proof at trial.

### III

#### A

At the outset I find that Mr. DeLaiarro did not carry his burden to prove by a preponderance of the evidence that Ms. Melhem acted in any manner that would support a determination that her indebtedness to Mr. DeLaiarro should be excluded from her discharge under either Code § 523(a)(2)(A) or (a)(6). The evidence at trial established that Ms. Melhem's involvement in the operation of the gas station was limited to part-time work at the cash register and writing (but not signing) checks at the direction of Mr. Melhem. She never met Mr. DeLaiarro. She had no control over the Citizens Bank checking account or access to the funds in the account. The evidence comes nowhere near establishing that Ms. Melhem misrepresented or acted under false pretenses or fraudulently with respect to Mr. DeLaiarro or intended to injure him.

#### B

With respect to Mr. Melhem, based on the evidence adduced at trial I find that Mr. DeLaiarro has established by a preponderance of the evidence that he was injured to the tune of $27,726.30 by Mr. Melhem as a result of Mr. Melhem's signing and delivering to him the May 4, 2010 and May 7, 2010, insufficient funds checks. Mr. DeLaiarro did not, however, carry his burden to prove that Mr. Melhem intended to cause him injury by issuing those checks, or more importantly, that Mr. Melhem's conduct was malicious, that is without just cause or excuse.

Intent to injure and maliciousness are prerequisites to establishing a claim for non-dischargeability under Code § 523(a)(6).

> [F]or a debt to be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6), the creditor must show that: (1) the creditor suffered an injury; (2) the injury was the result [of] the debtor's actions; (3) the debtor intended to cause the injury or that there was a substantial certainty that the injury would occur; and (4) the debtor had no just cause or excuse for the action resulting in injury.

*In re Flores*, 535 B.R. 468, 486 (Bankr. D. Mass. 2015) (harmonizing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998) and *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853 (1st Cir. 1997)).

Thus Mr. DeLaiarro's count for relief under Bankruptcy Code § 523(a)(6) cannot succeed.

This leaves Mr. DeLaiarro's alternative claim of non-dischargeability under Bankruptcy Code § 523(a)(2)(A). To prevail on his (a)(2)(A) claim Mr. DeLaiarro had to prove by a preponderance of the evidence that:

1) Mr. Melhem made a knowingly false representation or made a representation in reckless disregard of the truth,
2) He intended to deceive Mr. DeLaiarro,
3) He intended to induce Mr. DeLaiarro to rely upon the false statement,
4) Mr. DeLaiarro actually relied upon the false statement,
5) Mr. DeLaiarro's reliance was justifiable, and
6) His reliance upon the false statement caused damage.

*See Stewart v. Stewart (In re Stewart)*, 948 F.3d 509, 520 (1st Cir. 2020) (citing *Sharfarz v. Goguen (In re Goguen)*, 691 F.3d 62, 66 (1st Cir. 2012)). Each of the six elements (the so-called *Palmacci* factors) requires a separate finding of fact and the failure to prove any one of them will be fatal to a plaintiff's case. *Stewart*, 948 F.3d at 520 (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 787-88 (1st Cir. 1997)).

Historically, indignant creditors holding bounced checks have not fared well in § 523(a)(2)(A) actions brought against bankrupt makers of those checks. This may in large part be due to a principle enunciated by the U.S. Supreme Court in *Williams v. United States*, 458

7

U.S. 279, 284 (1982), that, "technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'" While *Williams* was not a bankruptcy case, a number of bankruptcy courts have relied on *Williams* to conclude that an insufficient funds check cannot be a false representation within the meaning of § 523(a)(2)(A). *See In re Alexander*, 427 B.R. 183, 195 (Bankr. D. Mass. 2010) ("A check does not constitute a representation that there are sufficient funds in the account to cover the check."); *In re Sanchez*, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002); *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000); *In re Guest*, 193 B.R. 745, 748 (Bankr. E.D. Pa. 1996); *In re Drayer*, 29 B.R. 831, 834 (Bankr. D. Mass. 1983).

But just because the issuance of a check may not be an affirmative assertion of its validity, this does not mean that a § 523(a)(2)(A) remedy is *ab initio* beyond the reach of one who is injured if the check bounces. The issuance of a check may not be an affirmative statement that it is supported by sufficient funds to clear the payer's bank when presented but it is certainly an implicit one. As *Stewart* reminds us, § 523(a)(2)(A) applies not only to affirmatively false representations but also to false pretenses which it defines as an implied misrepresentation or a false impression created by conduct of the debtor. 948 F.3d at 520. When Mr. Melhem handed a check to Mr. DeLaiarro his unstated, but clearly understood, message was "when you cash this check you will be paid for the gasoline you sold me." For this reason, I find that Mr. Melhem's conduct in issuing the two insufficient funds checks constituted acting under false pretenses within the meaning of § 523(a)(2)(A).

The questions of intent to deceive and to induce reliance, which comprise the second and third elements for establishing non-dischargeability, have always been thorny ones as they require inquiry into a person's state of mind. Since direct evidence as to a state of mind is rarely

8

available, courts in the First Circuit often look to the totality of the circumstances to infer intent. *Palmacci*, 121 F.3d at 789. The recklessness of a person's conduct is a basis for finding a bad intent. "Intent to deceive may be demonstrated by showing that [the debtor made] a false representation recklessly, careless of whether it is true or false." *In re Zutrau*, 563 B.R. 431, 445 (1st Cir. BAP 2017) (alteration in original) (quoting *R.C. Olsen Cadillac, Inc. v. Haras (In re Haras)*, 526 B.R. 435, 440 (Bankr. D. Mass. 2015) (internal quotation marks omitted)). "Statements made in reckless disregard of their truth, to be sure, can be evidence of an intent to deceive, and such statements may well be sufficient of themselves for the fact finder to conclude that the party had the requisite intent." *In re Roberts*, 82 B.R. 179, 184 (Bankr. D. Mass. 1987).

In this case, the evidence establishes that in April and May of 2010, Mr. Melhem was regularly overdrawn on the Citizens Bank checking account. The account incurred insufficient funds and overdraft fees four times in April and nine times in May. I find that in May 2010, when Mr. Melhem gave Mr. DeLaiarro the checks at issue in this proceeding, he had no idea whether the checks would clear. I find that his operational program at the time was to hand out checks and if they cleared, fine; and if they didn't, well, he'd try again with another check assuming the vendor was willing to take one. This level of recklessness, I conclude, establishes that Mr. Melhem intended to deceive Mr. DeLaiarro and to induce him to do business with him.

That Mr. DeLaiarro relied on Mr. Melhem's deception is without doubt. The facts establish that Mr. DeLaiarro would not have sold Mr. Melhem gasoline had he not believed Mr. Melhem would pay him. That Mr. DeLaiarro's reliance resulted in his injury has already been determined. As indicated above, Mr. DeLaiarro is owed $27,726.30 as a result of Mr. Melhem's conduct. Thus Mr. DeLaiarro has carried his burden as to five of the six *Palmacci* factors.

The final hurdle Mr. DeLaiarro must clear in order to satisfy the six-factor test for establishing non-dischargeability under § 523(a)(2)(A) is to prove that his reliance was justifiable. I find that he has failed to so. Mr. DeLaiarro took Mr. Melhem on as a customer in April 2010 without any vetting process whatsoever. He failed to initiate a credit check, request a banking reference, or require any financial information from Mr. Melhem. He did not provide to Mr. Melhem written terms which would govern their business relationship, never mind requiring Mr. Melhem to sign anything agreeing to those terms. And the most consequential business term that he had imposed "every time" he sold gasoline to his customers, namely payment at the time of delivery, Mr. DeLaiarro did **not** impose on Mr. Melhem. He delivered gas to Mr. Melhem without receiving payment on the spot. What's more, when, in the very first month of their relationship, Mr. Melhem bounced a check to him (even though he ultimately made good on it), Mr. DeLaiarro did not take steps to adjust the terms of their business relationship to better protect himself. He could easily have avoided the losses he experienced in May by, for example, putting Mr. Melhem on COD (cash on delivery) terms. Mr. DeLaiarro's conduct vis-à-vis Mr. Melhem was unreasonable from a business perspective and thus his reliance on Mr. Melhem to actually pay him for the gasoline he purchased was unjustified. Having failed to establish each and every element of the test for non-dischargeability under § 523(a)(2)(A), Mr. DeLaiarro's claim cannot succeed.

## IV

For the reasons stated above, Mr. DeLaiarro has failed to carry his burden of proof under either Bankruptcy Code § 523(a)(2)(A) or § 523(a)(6). Therefore, judgment shall enter in favor of Mr. Melhem and Ms. Melhem on both counts of Mr. DeLaiarro's complaint.

Dated: May 22, 2020                                            By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:     Danielle Callahan Gill, Esq.
Callahan Law Group, LLC
Woburn, MA
for the plaintiffs, Paul DeLaiarro and Johnny's Oil Company, Inc.

Nadine Champagne, Esq.
Law Office of Nadine Champagne
Roslindale, MA
for the defendants, Yacoub B. Melhem and Denise Y. Melhem